UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:15-CV-00209-TBR-LLK

**DEVRON DWAYNE WADLINGTON**                                                              **PETITIONER**

v.

**AARON SMITH, Warden**                                                                          **RESPONDENT**

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION

This matter is before the Court on Petitioner's petitioner for writ of habeas corpus pursuant to 28 U.S.C. 2254, to which Respondent has responded in opposition, and Petitioner has replied. Dockets 1, 18, and 20. The Court referred this case to the undersigned Magistrate Judge for findings of fact, conclusions, and recommendations on any dispositive matter.

A Trigg County jury convicted Petitioner of murder and sentenced him to 20 years' imprisonment.

The petition presents eight claims. Claims 1 through 3 allege trial-court error and were considered by the Kentucky Supreme Court upon direct appeal; Claims 4 and 5 allege trial-counsel error and were considered by the Kentucky Court of Appeals in petitioner's collateral attack pursuant to Kentucky Rules of Criminal Procedure (RCr 11.42); Claim 6 alleges cumulative error; and Claims 7 and 8 allege trial- and appellate-counsel error and were considered by the Kentucky Court of Appeals in petitioner's post-conviction motion pursuant to Kentucky Rules of Civil Procedure (CR) 60.02.

The RECOMMENDATION will be to DENY the petition because: Claims 1-5 are without merit for the reasons identified by the state courts; Claim 6 is not cognizable in a Section 2254 petition; Claims 7 and 8 are without merit for the reasons identified herein (notwithstanding the state court's decision to decline to reach the merits due to procedural default).

**Background facts and procedural history**

Petitioner and his co-defendant, George Mayes, arrived at Henry's Place, a nightclub in Trigg County, Kentucky. After fighting and roughhousing broke out, management asked a crowd of approximately 200 patrons to leave. Although a large crowd was present outside the nightclub, no one came forward claiming to see exactly what occurred next (i.e., who shot whom). It is, however, undisputed that the grand finale was the exit of Petitioner and Mayes in a blue Cadillac driven by Rodell Acree, with one or both co-defendants firing shots into the air.

Sisters Ashley and Jeneen Riley testified that Petitioner and Mayes fired into the crowd immediately before exiting in the Cadillac, and Jeneen added that Petitioner used what looked like a "black nine millimeter" and Mayes had "I think it was silver, a big gun, like a .44, .45." 2015 WL 2445088. Neither claimed to have seen which co-defendant shot the murder victim, LaWarren O'Keith Sims.

The blue Cadillac arrived at the home of Billy Alexander and departed. Alexander later discovered a gun wrapped in a cloth beside his door. Alexander retrieved the gun and, because he was scared and did not know what was going on, and deposited it into a next-door lot.

Authorities determined that Sims had been shot twice but the fatal bullets were never recovered. They pierced Sims' body and probably landed in an adjacent field. Authorities were unable to recover them with a metal detector because the field was already full of metal.

Authorities recovered two .45-caliber shell casings and one 9-mm shell casing at the Henry's-Place scene.

Authorities recovered a .45-caliber gun in a wooded area near Alexander's house and determined that the shell casings from the scene matched the .45 gun. They also recovered a 9-mm handgun, which had been placed under the seat of an abandoned vehicle in the same area.

An FBI weapons expert testified that the .45 shell casings recovered came from the .45 gun found by the police, but the 9-mm shell casing did not come from the recovered 9-mm handgun.

A Trigg County jury convicted Petitioner of wanton murder and sentenced him to 20 years' imprisonment.

The Kentucky Supreme Court affirmed on direct appeal. 2008 WL 4691945. The Kentucky Court of Appeals affirmed the trial court's denial of Petitioner's motion for post-conviction relief pursuant to RCr 11.42 (2013 WL 1003490) and subsequently pursuant to CR 60.02 (2015 WL 2445088).

**Standard of review of claims presented to the state courts**

28 U.S.C. 2254(d) requires "heightened respect" for legal and factual determinations made by state courts. Herbert v. Billy, 160 F.3d 1131, 1134 (6th Cir. 1998). Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This is a "difficult to meet and highly deferential standard." Cullen v. Pinholster, 131 S. Ct. 1388, 1399 (2011). All findings of fact by the state court are presumed to be correct and may be rebutted only by "clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 737-38 (6th Cir. 2003) (citing 28 U.S.C. 2254(e)(1)). Legal conclusions made by state courts are also given substantial deference. "[A] federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fair-minded jurists could disagree

that the state court's decision conflicts with this Court's precedents." Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013).

    1. **The trial court did not err in refusing to order separation / sequestration of witnesses and, alternatively, the refusal did not deprive Petitioner of a constitutional right.**

Petitioner agreed that Detective Stegar, who testified about retrieved bullets and witness interviews, could remain in the court room during testimony but objected to the presence of any fact witness to the actual shooting.

On the second day of trial, when Petitioner observed fact witness Carl Copeland enter the court room, he moved for separation of witnesses pursuant to Kentucky Rules of Evidence (KRE) 615. The trial court denied the motion on the ground that the motion was made too late, proceeded with Detective Stegar's testimony (with Copeland being present), and then called Copeland to testify. Thereafter, upon Petitioner's insistence, the trial court ordered separation of witnesses.

The Kentucky Supreme Court found no reversible error due to a lack of evidence that Copeland tailored his testimony to, or that his testimony had any bearing on, Detective Stegar's testimony. 2008 WL 4691945. The state court's finding was not "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Section 2254(d)(1).

Alternatively, Petitioner's claim is not cognizable in a Section 2254 petition because there is no constitutional right to separation of witnesses. Though the rule is "a long-established and well-recognized measure designed to increase the likelihood that testimony will be candid … the due process clause does not incorporate every refinement of legal procedure designed to make trials fairer or more accurate. Smoot v. Woods, 2016 WL 4727428 (W.D.Mich.) quoting Bell v. Duckworth, 861 F.2d 169 (7th Cir. 1988); see also Farra v. Carlton, 2008 WL 4057821 (E.D.Tenn.) quoting Mathis v. Wainwright, 351 F.2d 489 (5th Cir.1965) for the proposition that "[A] complaint

that the trial court failed to invoke the rule of sequestration of witnesses does not raise a question that can be reached by federal habeas corpus, since such denial does not amount to a deprivation of [a] constitutional rights."

The trial court did not err in refusing to order separation / sequestration of witnesses and, alternatively, the refusal did not deprive Petitioner of a constitutional right.

### 2. The trial court did not err in admitting into evidence a 9-mm handgun, which was retrieved by authority but not fired at the scene and, alternatively, the admission is procedurally defaulted.

Petitioner claimed that his trial counsel was ineffective for not objecting to admission of the handgun. At an evidentiary hearing, counsel testified that it was his trial strategy <u>not</u> to object to the gun in order to highlight the fact, in his closing argument, that the Commonwealth attempted to connect Petition to the shooting via a 9-mm handgun which an FBI expert testified did not match the casing found at the scene. 2013 WL 1003490.

The Kentucky Supreme Court found that Petitioner's claim that the trial court erred in admitting the gun into evidence was procedurally defaulted because counsel did not raise a contemporaneous objection to admission of the evidence. It further found that there was no palpable (though unpreserved) error in light of the broad definition of relevant, admissible evidence under KRE 401 and 402 and counsel's strategic decision not to object. 2008 WL 4691945. The state court's finding was not "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Section 2254(d)(1).

Alternatively, Petitioner's trial-error claim is defaulted under state procedural rules, which constitute an independent and adequate reason for this Court's declining to reach the merits. See Coleman v. Thompson, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state

procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law").

### 3. The trial court did not err in denying Petitioner a self-defense jury instruction and, alternatively, the denial did not deprive him of a meaningful defense.

Petitioner allegedly needed to defend himself against Anthony Wilson. Mayes and Wilson had, days earlier, been in a fight. The night of the shooting, Mayes arrived at Henry's Place with a gun strapped to a waistband under his shirt. Mayes hit Wilson with a beer can. Although Mayes kept raising his shirt to show his gun (giving a "back off" message), Wilson continued yelling and approaching in an angry, threatening manner. Mayes and Petitioner shot into the crowd (or perhaps at Wilson) and drove off firing shots into the air.

Kentucky Revised Statutes (KRS) 503.050 requires that, to warrant the use of deadly physical force, the individual must be in "imminent" danger. The Kentucky Supreme Court affirmed the trial court's ruling that Wilson's continued approach and the other evidence presented at trial did not support a self-defense instruction. 2008 WL 4691945. The state court's finding was not "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Section 2254(d)(1).

Alternatively, the Constitution requires that "a defendant in a criminal trial has the right to a meaningful opportunity to present a complete defense." Manoku v. Bauman, 2016 WL 418408 (6th Cir.) quoting Taylor v. Withrow, 288 F.3d 846, 851 (6th Cir.2002). As part of that right, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Id. quoting Mathews v. United States, 485 U.S. 58, 63 (1988). Petitioner's principal defense was that he did not fire the lethal (or any) shot. Denying Petitioner an alternative (and arguably incompatible) defense of self-defense did not deprive him of a meaningful defense.

### Standard of review of claims of ineffective assistance of trial counsel that were presented to the state courts

Federal habeas courts review claims of ineffective assistance of trial counsel that were presented to the state courts pursuant to a so-called "doubly deferential" standard. The first level of deference is based upon case-law standards defining ineffectiveness, which existed long before enactment of Section 2254(d) in 1996. Section 2254(d) adds the second level of deference.

Counsel is constitutionally ineffective only if counsel's performance was objectively deficient, and the deficient performance was prejudicial, i.e., there is a reasonable probability that, but for the deficiency, the result would have been more defendant-favorable. Strickland v. Washington, 466 U.S. 668 (1984).

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

Surmounting Strickland's high bar is never an easy task, but establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. Courts must apply the two in tandem, and the resulting standard is doubly deferential: The question is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 562 U.S. 86, 105 (2011).

### 4. Trial counsel was not ineffective for failing to interview and call witnesses.

At an evidentiary hearing, counsel testified that he interviewed several individuals who were at Henry's Place the night of the shooting. The majority claimed to see nothing; some

7

claimed Petitioner had a gun; no one claimed to see Petitioner fire a shot or hit Sims. Four witnesses, including Petitioner's half-brother James Crenshaw, testified (at the evidentiary hearing) on Petitioner's behalf that they did not see Petitioner with a gun but also did not see who fired shots or hit Sims. Counsel testified that he had subpoenaed some witnesses to testify at trial but decided not to call any.

The Kentucky Court of Appeals found that, under these circumstances, "we fail to appreciate the manner in which counsel's investigation was deficient or how any further investigation would have aided [Petitioner's] defense." 2013 WL 1003490. Because none of the witnesses "could identify a shooter, we do not find counsel's decision to not call these witnesses as unreasonable or ineffective." Id.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, supra, at 691. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." Rompilla v. Beard, 545 U.S. 374, 383 (2005).

Here, a reasonable argument that counsel satisfied Strickland's deferential standard is that counsel was justified in not pursuing the matter further when he encountered a difference of opinion as to whether Petitioner had a gun. Further investigation might have revealed that Petitioner not only had a gun but used it and, worse still, that he shot Sims. This would not have assisted the defense.

Petitioner's ineffectiveness claims based on failure to interview and call witnesses is without merit under this Court's doubly-deferential standard of review.

**5. Trial counsel was not ineffective for failing to object to introduction of the 9-mm handgun.**

As indicated above in connection with Petitioner's third claim that the trial court erroneously admitted into evidence the 9-mm handgun, at an evidentiary hearing, trial counsel testified that it was his trial strategy not to object to the gun. The strategy was to highlight the fact, in closing argument, that the Commonwealth attempted to connect Petition to the shooting via the gun, yet there was a lack of evidence that it was fired at Henry's Place on the night in question. 2013 WL 1003490.

A defendant alleging ineffective assistance of counsel "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, supra, at 689. The Kentucky Court of Appeals found that Petitioner failed to overcome this presumption. 2013 WL 1003490.

Petitioner's claim that counsel was ineffective for not objecting to introduction of the 9-mm handgun is without merit under this Court's doubly-deferential standard of review.

**6. Cumulative-error claims are not cognizable in federal habeas petitions.**

Petitioner's sixth claim of cumulative error is not cognizable in a Section 2254 petition because the Supreme Court has not spoken on the issue. Sheppard v. Bagley, 657 F.3d 338, 348 (6th Cir. 2011).

**Standard of review of claims of ineffective assistance of trial counsel
that were not presented to the state courts**

The trilogy of Martinez v. Ryan, 132 S.Ct. 1309 (2012), Trevino v. Thaler, 133 S.Ct. 1911 (2013), and Woolbright v. Crews, 791 F.3d 628 (6th Cir.2015) has made it significantly less relevant to federal habeas courts whether petitioners previously presented claims of ineffective assistance

9

of trial counsel to the state courts – whether the claims were not presented at all or whether they were presented in a manner the state courts deemed procedurally inappropriate.[1]

Historically, federal habeas courts did not consider the merits of claims not first presented to the state courts. Where no state-court remedy remained, the claims were deemed procedurally defaulted and were considered only if the petitioner made a showing of cause excusing the default and actual prejudice resulting therefrom. Coleman v. Thompson, 501 U.S. 722, 748-49 (1991). Ineffective assistance of trial counsel for failing to raise a meritorious claim might constitute cause excusing a procedural default. However, the ineffectiveness claim had to first be presented to the state courts as an independent claim (e.g., in an RCr 11.42 motion) before the federal court would consider it as cause. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

Now, a petitioner's lack of effective assistance of counsel in prosecuting his RCr 11.42 motion (i.e., either the motion was pro-se or appointed 11.42 counsel was ineffective) is deemed cause excusing failure to raise a particular trial-counsel ineffectiveness claim in the 11.42 motion (and, therefore, cause excusing failure to present the claim to the state courts as an independent claim) if the underlying trial-counsel ineffectiveness claim is "substantial … which is to say that ... [it has] some merit." Brizendine v. Parker, 644 Fed.Appx. 588, 2016 WL 1169085 quoting Martinez.

---

[1] In addressing Petitioner's remaining claims (7 and 8), Respondent relies on the Kentucky Court of Appeals' affirmance (2015 WL 2445088) of the trial court's denial of Petitioner's CR 60.02 motion claiming that counsel on direct appeal was ineffective for failing to raise various unpreserved trial errors that were nonetheless reviewable pursuant to CR 10.26: "A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."
Although the Court of Appeals held (2015 WL 2445088) that these claims of ineffective assistance of appellate counsel were procedurally unavailable to Petitioner, in light of trial counsel's failure to preserve the underlying claims and the trilogy of cases mentioned above, that holding is not of case-dispositive significance.

### 7. Trial counsel was not ineffective for not moving for a directed verdict of acquittal.

Petitioner claims that trial counsel was ineffective for failing to move for a directed verdict of acquittal due to insufficient evidence to support a wanton-murder conviction. The claim is without merit because, in light of two prosecution witnesses (the Riley sisters) who testified that they saw Petitioner fire shots into the crowd, the motion would have lacked a valid legal basis and likely would have been denied. In other words, there was no Strickland deficient performance or prejudice resulting therefrom. Therefore, trial counsel was not ineffective for not moving for a directed verdict of acquittal.

To the extent Petitioner is arguing that the evidence did not support the intentional murder charge, any error was harmless because the jury did not find him guilty of intentional murder. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (Trial error is constitutionally harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict").

### 8. Trial counsel was not ineffective for not moving for a post-verdict acquittal.

Petitioner claims that the jury implicitly acquitted him because he was indicted for intentional murder but convicted of wanton murder. Therefore, counsel was allegedly ineffective for not moving for a post-verdict acquittal.

The underlying claim of implicit acquittal is without merit. This Court had occasion to consider a factually and legally-similar claim in Rouse v. Thompson, 5:08-CV-00180-TBR-WDK. A McCracken County jury convicted Rouse of wanton murder in connection with a shooting that occurred at a nightclub in Paducah, Kentucky. Like Petitioner, Rouse was indicted for intentional murder, and the jury convicted him of wanton murder.

Rouse argued that the trial court constructively amended the indictment when it instructed the jury on all forms of criminal homicide, including wanton murder. A constructive

11

amendment is per-se error, and (as Petitioner's articulation of his eighth claim highlights) a jury's finding of guilt to a constructively-amended charge is implicitly an acquittal on the charged offense.

This Court determined that there had been no constructive amendment, and the Sixth Circuit affirmed (in an unpublished opinion) (internal quotations omitted):

> A constructive amendment to an indictment occurs "when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment . . . ." United States v. Chilingirian, 280 F.3d 704, 712 (6th Cir. 2002). Rouse's defense at trial was that he did not shoot the victim. Therefore, under a theory of intentional or wanton murder, Rouse's defense remained the same. Accordingly, he was given the opportunity to defend the charges against him. … Compare Lucas v. O'Dea, 179 F.3d 412, 417 (6th Cir. 1999). (Sixth Circuit opinion, 5:08-CV-00180-TBR-WDK, Docket 34).[2]

Petitioner's defense was that he did not shoot Sims – the same whether the charge was intentional or wanton murder. Therefore, there was no constructive amendment, and no implicit acquittal. Trial counsel was not ineffective for not moving for a post-verdict acquittal.

## **RECOMMENDATION**

The Magistrate Judge RECOMMENDS that the Court deny the petition pursuant to 28 U.S.C. 2254 (Docket 1).

---

[2] In somewhat more colorful language, the Kentucky Supreme Court described this same governing law as follows (internal quotations omitted): "An indictment is sufficient if it fairly informs the accused of the nature of the charged offense and does not mislead him. Under our current system of notice pleading, it is unnecessary for the indictment to list the exact details of the crime for which [a defendant] stands accused. If the guts are there the feathers are inconsequential. Wanton murder and intentional murder, although they require proof of different forms of culpability, are nonetheless the same crime. Typically, a variance between the instructions and the indictment will be found misleading where the variance guts a defense theory. Under the charge of either intentional or wanton murder, the defense would remain the same." Rouse v. Commonwealth, 2003 WL 22971279.

## NOTICE

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.1984).