UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00209

DEVRON DWAYNE WADLINGTON                                                              PETITIONER

v.

AARON SMITH, Warden                                                                   RESPONDENT

## Memorandum Opinion

This matter is before the Court upon Petitioner Devron Dwayne Wadlington's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [DN 1.] Magistrate Judge King recommends that Wadlington's petition be denied. [DN 21.] Wadlington has filed objections to portions of the Magistrate Judge's report. [DN 22.] The Court must review *de novo* those portions of a Magistrate Judge's recommended disposition to which Wadlington objects. 28 U.S.C. § 636(b)(1)(C). After careful consideration of Wadlington's objections and the record, the Court agrees with the Magistrate Judge that Wadlington's petition is without merit. Therefore, for the following reasons, Wadlington's § 2254 petition for a writ of habeas corpus [DN 1] is DENIED. Furthermore, the Court DENIES a certificate of appealability as to all grounds raised in his petition.

## I. Facts and Procedural History

Petitioner Devron Dwayne Wadlington was convicted by a Trigg County, Kentucky jury of the wanton murder of LaWarren O'Keith Sims outside a nightclub. The following factual summary is taken from the Kentucky Court of Appeals' first opinion in Wadlington's case:

Wadlington and a codefendant, George Kelly Mayes, were indicted and jointly tried for the murder of LaWarren O'Keith Sims. Sims was shot and killed in a crowded altercation outside Henry's Place, a nightclub in Trigg County. The evidence presented at trial revealed that no eyewitness positively identified Sims's shooter, and the bullet that killed Sims was never found. Eyewitnesses testified to seeing Mayes pull a gun from his waistband when confronted by Anthony Wilson, a patron of Henry's Place. Other eyewitnesses testified to seeing Mayes and Wadlington shooting guns into a crowd or into the air. Another witness testified that she saw Wadlington holding a 9mm gun during the altercation.

James Rodell Acree testified that he drove Mayes, Wadlington, and others to Henry's Place. Following the altercation, Acree drove Mayes and Wadlington to Cadiz. He testified that Mayes fired shots from the car window while leaving the scene. Also while in the car, Acree overheard Mayes ask Wadlington, "did you hit him?" Acree helped Mayes clean out his car, in which they found a Budweiser box which contained a bullet. They threw the box and bullet into a field. Billy Alexander testified that he found a handgun near his home after Mayes had stopped by. Alexander threw the gun into a field near his house.

Acree and Alexander eventually led police to the field which contained the Budweiser box, a .45 handgun with a bullet in the chamber, a .45 bullet, and a 9mm handgun that was wrapped in a black t-shirt and mask under the seat of an abandoned vehicle. Police also searched the area around Henry's Place and found .45 shell casings and a 9mm casing nearby. An FBI weapons expert testified that the .45 shell casings recovered came from the .45 gun found by the police, but that the 9mm shell casing did not come from the recovered 9mm gun.

Counsel for Wadlington cross-examined both Acree and Alexander regarding their status as convicted felons, their incomplete statements to police, their expectations of getting favorable treatment in return for their cooperation, and Acree's admission to being high on the night of the shooting. No proof was introduced for Wadlington at the close of the Commonwealth's case. The trial court instructed the jury to decide whether Mayes and Wadlington were guilty, either individually or acting in complicity with the other, of murdering Sims; of wanton murder; or of a lesser degree of homicide. The jury convicted both of wanton murder.

*Wadlington v. Com.*, No. 2011-CA-001260-MR, 2013 WL 1003490, at *1 (Ky. Ct. App. Mar. 15, 2013) (*Wadlington II*). The Kentucky Supreme Court affirmed Wadlington's conviction on direct appeal. *See Wadlington v. Com.*, No. 2006-SC-000640-MR, 2008 WL 1003490 (Ky. Oct. 23, 2008) (*Wadlington I*). Specifically, the Commonwealth's highest court held that the trial court did not err by failing to sequester the Commonwealth's witnesses until the second day of testimony, by admitting the 9mm handgun into evidence, or by declining to give Wadlington's desired self-defense jury instruction. *See id.* at *2-5.

Wadlington then brought an action in the Trigg Circuit Court pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42 alleging that his trial counsel was ineffective. In that proceeding, Wadlington claimed that his attorney failed to conduct a reasonable investigation of potential witness, call mitigating witnesses, and object to the admission of the 9mm handgun. *Wadlington II*, 2013 WL 1003490, at *2. He also claimed that his attorney's cumulative errors deprived him of effective representation. *Id.* at 3. The Trigg Circuit Court denied Wadlington's RCr 11.42 motion, the Kentucky Court of Appeals affirmed, and the Kentucky Supreme Court denied discretionary review.

Wadlington's final journey in state court began when he filed a Kentucky Rule of Civil Procedure (CR) 60.02 motion, once again seeking to vacate his sentence. There, Wadlington raised several arguments, some old and some new. He contended for a second time that his trial counsel was ineffective. *Wadlington v. Com.*, No. 2014-CA-001612, at *4 (Ky. Ct. App. May 22, 2015) (*Wadlington III*).

3

This time, Wadlington also argued that his counsel on direct appeal and during his RCr 11.42 proceedings were both ineffective. *Id.* at 4-5. Finally, he sought to have the black t-shirt found with the 9mm handgun tested for DNA. *Id.* at 5. The Kentucky Court of Appeals rejected all of Wadlington's arguments, and the Kentucky Supreme Court again declined to hear his case.

This action followed.[1] The Court referred Wadlington's § 2254 petition to Magistrate Judge King for findings of fact, conclusions of law, and a recommendation. [DN 8.] The Magistrate Judge issued his findings, recommending that Wadlington's petition be denied as to each of his eight claims. *See* [DN 21.] Wadlington filed objections, [DN 22], and this matter is ripe for adjudication.

## II. Standard of Review

"Under the 1996 Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), federal habeas relief may not be granted unless the state court decision at issue: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

---

[1] Wadlington actually filed a § 2254 petition prior to this one, while *Wadlington III* was still pending. Upon learning that his CR 60.02 proceedings were still ongoing, the Court dismissed Wadlington's first § 2254 petition in order to allow him to exhaust his state court remedies. *See Wadlington v. Smith*, No. 5:14-CV-00123 (W.D. Ky. 2014). After *Wadlington III* was decided, Wadlington asked the Sixth Circuit permission to file a second or successive habeas petition in this Court. The Sixth Circuit denied Wadlington's motion as unnecessary, and transferred his case to this Court. *See* [DN 16.]

State court proceeding." *Coleman v. Bergh*, 804 F.3d 816, 819 n. 1 (6th Cir. 2015); *Adams v. Bradshaw*, 817 F.3d 284, 288 (6th Cir. 2016).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court reaches a decision different from that of the Supreme Court on a set of materially indistinguishable facts." *Trimble v. Bobby*, 804 F.3d 767, 773 (6th Cir. 2015). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case." *Id.* "For factual matters, a district court may not grant a habeas petition unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* (quoting 28 U.S.C. § 2254(d)(2)).

"To obtain habeas relief, 'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). This standard is "difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citation omitted).

### III. Discussion

In his objections, Wadlington argues that the Magistrate Judge erred in concluding that the trial court's admission of the 9mm handgun does not require the Court to grant his petition.[2] Particularly, he maintains that his trial counsel was ineffective in failing to object to the weapon's admission into evidence, and that the trial court's decision to admit the gun deprived Wadlington of a fair trial. *See* [DN 22 at 2-3.] But neither claim entitles Wadlington to relief.

First, Wadlington contends that the trial court violated his due process rights by admitting the 9mm handgun into evidence. [DN 1-1 at 17-19.] He first raised this claim on direct appeal, and the arguments he made before the Kentucky Supreme Court are substantially the same as his arguments today. Because a FBI weapons expert test testified during trial that the 9mm shell casing found at the scene of Sims' murder did not match the 9mm pistol recovered near Billy Alexander's house, Wadlington believes that the weapon was irrelevant and should have been excluded.

Wadlington's trial counsel did not object to the admission of the handgun. Because the issue was unpreserved on direct appeal, the Kentucky Supreme Court reviewed the trial court's decision to allow the pistol into evidence under the palpable error standard set forth in RCr 10.26. *Wadlington I*, 2008 WL 4691945,

---

[2] Wadlington also states that he "totally disagrees with the Magistrate [Judge's] report that his petitions contain[s] both exhausted and unexhausted claims." [DN 22 at 1.] However, a review of the Magistrate Judge's report and recommendation reveals that the Magistrate Judge did not find that any of Wadlington's claims are unexhausted in a way that would bar federal review.

at *4. The court noted that despite the aforementioned ballistics test, the handgun was still relevant evidence:

> Although this gun was not definitively established as firing the bullet that killed Sims, it was, nonetheless, relevant evidence under KRE 401, which broadly defines relevant evidence as making the existence of a material fact more or less probable and, thus, presumptively admissible under KRE 402, which generally states that relevant evidence is admissible. Billy Alexander testified to having found a gun near his door after Mayes and Wadlington stopped by his residence the night of the shooting and to having thrown that gun out into the woods where the Budweiser box was eventually found. After investigators found a .45 gun on the lot next to Alexander's house, a police canine directed the officers to the 9mm gun, which was found under an old car seat not far from the place where the .45 was found. Although experts testified that the 9mm shell casing found did not come from the 9mm gun found in the woods, a jury might still reasonably infer that the 9mm gun was used in the shooting that resulted in the untimely death of LaWarren Sims.
>
> Given the possible relevancy of the evidence; the lack of preservation of this issue; and the possibility that defense counsel elected not to object to its admission but, instead, to point to its introduction as showing shoddy police work, we cannot conclude that the trial court's admission of this evidence amounted to palpable error under RCr 10.26.

*Id*. Additionally, at least one witness, Jeneen Riley, testified that she saw Wadlington with a 9mm handgun at Henry's Place. [DN 18-4 at 147]; *Wadlington I*, 2008 WL 4691945, at *3; *Wadlington II*, 2013 WL 1003490, at *1; *Wadlington III*, 2015 WL 2445088, at *2.

The admission of the 9mm pistol did not deprive Wadlington of a fair trial. The trial court's erroneous admission of evidence will only violate a defendant's due process rights when "an evidentiary ruling is 'so egregious that it results in a denial of fundamental fairness.'" *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007)

7

(quoting *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)). "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000). "To warrant habeas relief, a questionable evidentiary admission must not only be erroneous, but it must also be so infirm that it rendered the trial fundamentally unfair, such that it had influence in determining the jury's verdict." *Hutton v. Mitchell*, 839 F.3d 486, 501-02 (6th Cir. 2016) (citations omitted).

Here, each reviewing Court has correctly recognized that although the ballistics test did not prove a match, other circumstantial evidence linked the gun to Wadlington, and Wadlington to the crime. Witnesses saw Wadlington with a 9mm handgun, shooting into the air as he and Mayes drove off in great haste from Henry's Place. Shortly after the pair left Billy Alexander's house that same night, Alexander found a gun near the doorway of his house, wrapped in cloth. Alexander testified that he disposed of the weapon in the field adjacent to his property. When police searched the field, they found the 9mm handgun under the seat of an abandoned car, wrapped in a black t-shirt and mask. On these facts, the Court cannot say with any conviction that the trial court erred by admitting the weapon as relevant evidence against Wadlington. *See Hudson v. Lafler*, 421 F. App'x 619, 627-29 (6th Cir. 2011) (petitioner not entitled to habeas relief when trial court allowed gun into evidence despite only minimal evidence suggesting gun was used in armed robbery). And because the admission of the gun was not erroneous, the

8

Magistrate Judge did not err in finding that Wadlington is not entitled to habeas relief on this claim.

Relatedly, Wadlington argues that he was denied the effective assistance of counsel when his attorney failed to object to the Commonwealth's admission of the 9mm handgun. [DN 1-1 at 26-27.] He first raised this claim in his RCr 11.42 proceedings in state court. In denying Wadlington relief on this claim, the Kentucky Court of Appeals wrote:

> At trial, a detective who worked the case testified that the 9mm handgun was not connected to the case, other than the fact that it was found in the process of investigation. An FBI ballistics expert testified that the 9mm shell casing found at Henry's Place was not fired from the 9mm handgun introduced as evidence. Additionally, counsel argued that not objecting to the admission of the 9mm handgun was his trial strategy intended to highlight the weakness of the Commonwealth's case against Wadlington. He highlighted such in his closing argument, pointing to the Commonwealth's attempt to connect Wadlington to the incident via the 9mm handgun, despite no evidence that the gun was fired at Henry's Place on the night in question. A counsel's recognition of evidence as having little to no relevance to the case, but using such to discredit the Commonwealth's case has been recognized as sound trial strategy. *See Taylor v. Commonwealth,* 63 S.W.3d 151, 163 (Ky. 2001), *abrogated on other grounds by Crawford v. Washington,* 541 U.S. 36, 64, 124 S.Ct. 1354, 1371, 158 L.Ed.2d 177 (2004). Counsel's decision not to object to the admission of the 9mm handgun was within the bounds of reasonable trial strategy, and thus not a basis for granting RCr 11.42 relief. Additionally, counsel effectively demonstrated that the 9mm handgun was not connected to the shooting at Henry's Place, and thus any prejudice which may have resulted from its admission was mitigated to a degree that it did not deprive Wadlington of a fair trial.

*Wadlington II*, 2013 WL 1003490, at *3.[3]

---

[3] Wadlington raised this same argument in his CR 60.02 proceedings, but the court refused to consider his claim because it "was previously raised and addressed in his RCr 11.42 motion." *Wadlington II*, 2015 WL 2445088, at *4.

9

Ineffective assistance claims are evaluated under a "doubly deferential" standard of review. *Burt v. Titlow*, ___ U.S. ___, 143 S. Ct. 10, 13 (2013). To establish ineffective assistance, the petitioner must first "demonstrate that his legal representation 'fell below an objective standard of reasonableness,' . . . and that he suffered prejudice as a result." *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). Next, AEDPA requires that the court "examine only whether the state court was reasonable in its determination that counsel's performance was adequate." *Id.* (citing *Burt*, 143 S. Ct. at 18).

For two reasons, Wadlington's ineffective assistance claim based upon his counsel's failure to object to the 9mm handgun must fail. First, as explained above, the Kentucky Supreme Court held on direct review that the trial court did not err in admitting the weapon into evidence. "Because the Kentucky Supreme Court determined on direct review that the evidence . . . [was] not objectionable, [the court] defer[s] to the state-court's finding that [Wadlington] did not suffer from ineffective assistance of counsel." *Hodge v. Haeberlin*, 579 F.3d 627, 648 (6th Cir. 2009).

Moreover, the Sixth Circuit has previously recognized that "any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state." *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006). In *Strickland*, the Supreme Court cautioned that "the defendant must overcome the presumption that,

10

under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A reviewing court should find a defense attorney's failure to object ineffective only when counsel "consistently fail[s] to use objections, despite numerous and clear reasons for doing so." *Lundgren*, 440 F.3d at 774.

Here, during Wadlington's RCr 11.42 proceedings, his trial counsel explained that he purposely did not object to the 9mm handgun because he believed it shone a light upon a weakness in the Commonwealth's case – namely, that the prosecution was attempting to connect Wadlington to the crime with a gun that did not match a shell casing found at the scene. As the Kentucky Court of Appeals observed, Kentucky law recognizes this as a viable strategy. *See Taylor v. Commonwealth,* 63 S.W.3d 151, 163 (Ky. 2001), *abrogated on other grounds by Crawford v. Washington,* 541 U.S. 36, 64 (2004). This Court agrees with the state court that counsel's decision not to object to the 9mm handgun was part of a deliberate trial strategy, and did not fall below the "objective standard of reasonableness" expected of criminal defense attorneys. *Strickland*, 466 U.S. at 687-88. In so holding, the state court did not reach a conclusion that is contrary to clearly established federal law. *See Schoenberger v. Russell*, 290 F.3d 831, 836-37 (6th Cir. 2002). The Magistrate Judge did not err in concluding that Wadlington is not entitled to habeas relief on this claim.

11

## IV. Certificate of Appealability

The Court will decline to issue a certificate of appealability in this case. A state or federal prisoner who seeks to take an appeal from the dismissal of a habeas corpus petition or a motion to vacate must satisfy the certificate of appealability requirements of 28 U.S.C. § 2253(c). A COA will be issued only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Such a substantial showing is made when a prisoner establishes that jurists of reason would find it debatable whether the petition or motion states a valid claim of the denial of a constitutional right or, in the cases in which the petition is resolved based upon a procedural ruling, that jurists could find it debatable whether the district court was correct in its procedural ruling. *See Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). A state prisoner may raise on appeal only those specific issues for which the district court grants a certificate of appealability. *Powell v. Collins*, 332 F.3d 376, 398 (6th Cir. 2003). Wadlington has not shown the denial of a constitutional right on any of his claims. Because reasonable jurists could not debate any of these points, the Court will deny Wadlington a certificate of appealability as to all grounds raised in his petition.

## V. Conclusion

The above matter having been referred to Magistrate Judge King, who has filed his Findings of Fact and Conclusions of Law, objections having been filed thereto, and the Court having considered the same, IT IS HEREBY ORDERED:

(1) The Court ADOPTS the Findings of Fact and Conclusions of Law as set forth in the report submitted by the Magistrate Judge [DN 21], and OVERRULES Petitioner's Objections [DN 22];

(2) Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [DN 1] is DISMISSED; and

(3) A Certificate of Appealability is DENIED as to each claim asserted in the petition.

A separate judgment shall issue.

CC: Counsel of Record
Devron Dwayne Wadlington, *pro se*